IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JANELLE I. WOOD, )
)
        Plaintiff, )
)    3:13-CV-01722-JO
   v. )
)
CAROLYN W. COLVIN, Acting Commissioner of )    OPINION AND ORDER
Social Security, )
)
        Defendant. )

JONES, J.,

    Plaintiff Janelle Wood appeals the Commissioner's decision to deny her claim for disability insurance benefits under Title II of the Social Security Act ("the Act") and to deny in part her claim for supplemental security income under Title XVI of the Act. The Court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

    When Wood filed her Title II and Title XVI applications, she alleged disability beginning February 16, 2006. She later amended the alleged onset of disability to December 21, 1999. Her insured status under the Act expired on December 31, 1999. Wood must establish that she became disabled on or before that date to prevail on her Title II claim. 42 U.S.C. § 423(a)(1)(A); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). Wood alleged disability from chronic cervical spine

1 - OPINION AND ORDER

strain, dysthymic disorder, learning disorder, anxiety disorder, obesity, and lumbar degenerative disc disease for which she underwent surgery in 2007.

The Administrative Law Judge ("ALJ") applied the sequential disability determination process described in 20 C.F.R. § 404.1520 and § 416.920. He determined that from the alleged onset of disability until August 2007, Wood's chronic cervical spine strain, dysthymic disorder, and learning disorder limited her ability to do basic work. He concluded that Wood's condition did not satisfy the criteria for any of the presumptively disabling conditions in the regulatory Listing of Impairments. The ALJ determined that, until August 28, 2007, Wood retained the residual functional capacity ("RFC") to perform a modified range of light work and was capable of withstanding the normal demands of an eight-hour work day. The vocational expert testified that a person with Wood's RFC could perform the work-related activities required in occupations such as light janitorial work and food prep work, which represent hundreds of thousands of jobs in the national economy. Admin. R. 380-81. Accordingly, the ALJ found Wood was not disabled within the meaning of the Act through August 28, 2007. Admin. R. 396.

The ALJ found that, commencing August 28, 2007, Wood developed additional limitations from lumbar degenerative disc disease, depression, obesity, and anxiety disorder. He found that Wood could no longer withstand a normal full-time work schedule and could not engage in competitive work. Accordingly, the ALJ issued a partially favorable decision. He found that Wood had failed to establish disability on or before the expiration of her insured status and denied her claim for disability insurance benefits under Title II. He allowed Wood's claim for supplemental security income under Title XVI from August 28, 2007 forward, but denied the claim for any time prior to that date. Admin. R. 396.

2 - OPINION AND ORDER

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence is such relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *See also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) ("Substantial evidences means more than a scintilla, but less than a preponderance.") (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I.    Claims of Error

Wood contends the ALJ erred at step two by omitting depression and anxiety from the severe impairments he identified. Wood contends the ALJ erred at step three by erroneously concluding that her condition did not satisfy the criteria for any presumptively disabling conditions in the regulatory Listings. Wood contends the ALJ failed to assess her RFC accurately because he discounted the credibility of her subjective statements, gave insufficient weight to the opinions of her physicians, and only gave moderate weight to her husband's testimony. Wood argues the ALJ's failure to accurately assess her limitations led him to find her capable of engaging in work through August 28, 2007.

## II. Step Two

At step two, the ALJ's task is simply to determine whether any combination of impairments has more than a *de minimis* impact on the claimant's ability to do basic work activities. Here, the ALJ resolved that question in Wood's favor and properly continued to the remaining steps of the sequential decision-making process. Accordingly, Wood has not alleged any harmful error at step two. *See Burch v. Barnhart,* 400 F.3d 676, 682 (9th Cir. 2005) (any error in omitting an impairment from the list of severe impairments at step two was harmless because step two was resolved in claimant's favor); *Lewis v. Astrue,* 498 F.3d 909 (9th Cir. 2007) (failure to list impairment as severe at step two was harmless because the limitations posed by the impairment were considered at step four).

## III. Step Three

At step three, the claimant bears the burden of showing that her impairments satisfy the criteria for an impairment in the regulatory Listings. *Burch,* 400 F.3d at 682-83; *Lewis v. Apfel,* 236 F.3d 503, 514 (9th Cir. 2001). For mental impairments, Wood must show that she has marked impairment in two of the four broad categories of function known as the "B Criteria": activities of daily living; social functioning; maintaining concentration, persistence, or pace; and repeated episodes of decompensation. 20 C.F.R. Pt. 404, Subpt. P, App 1, 12.00. The ALJ considered Wood's dysthymic disorder, depression, learning disorder, and anxiety disorder, singly and in combination. He found that these impairments caused moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. He found no evidence that Wood experienced episodes of decompensation. The ALJ concluded, therefore, that Wood had failed to show that her

4 - OPINION AND ORDER

mental impairments satisfied the B criteria before her insured status expired on December 31, 1999, or at any time before the date her disability began in August 2007. Admin. R. 392.

Wood contends the opinion of Anthony Gay, M.D. demonstrates that she satisfied the B criteria. Dr. Gay is a family practitioner who provided Wood with primary care during the relevant period of time. Admin. R. 306. In a letter dated August 14, 2009, Dr. Gay said Wood's activities of daily living were moderately impaired. He said she had marked impairment of social functioning, based on her subjective reports of altercations at work and with family members. He estimated marked impairment in concentration, persistence, or pace because he thought her ability to complete tasks would be impeded by unscheduled rest breaks and interruptions due to distractions. Admin. R. 306-07.

The ALJ gave Dr. Gay's opinion moderate weight, but less than full weight regarding the intensity of her chronic neck pain and limitations in mental function. Admin R. 394. An ALJ may reject the opinion of a medically acceptable treating source for "specific, legitimate reasons based on substantial evidence in the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).

As shown by the RFC assessment, the ALJ accepted Dr. Gay's diagnoses of cervical strain and depression. He discounted only Dr. Gay's opinion regarding the intensity and persistence of Wood's resulting limitations, because Dr. Gay indicated greater limitation than the medical evidence supported. For example, Dr. Gay opined that Wood had continuously and consistently complained of neck and back pain, attributed in part as a manifestation of her depression. The medical records show, however, that she did not persistently complain of neck or back pain and Dr. Gay did not indicate that chronic pain was an ongoing condition for several years beginning in 1998. Admin. R. 394. In addition, Dr. Gay did not administer psychological testing or record objective or clinical

5 - OPINION AND ORDER

evidence in his treatment notes to support the marked limitations he found in social functioning and concentration, persistence, or pace. An ALJ can properly reject a physician's opinion that is conclusory and unsupported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Batson*, 359 F.3d at 1195; *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999).

The ALJ pointed out that Dr. Gay drafted his opinion letter ten years after Wood's insured status expired in 1999. The absence of medical findings and the remoteness in time from the period described support an inference that Dr. Gay relied primarily on Wood's subjective descriptions of her limitations in formulating his opinion. An ALJ may discount a treating physician's opinion that is premised primarily on subjective complaints that the ALJ properly finds unreliable. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

The ALJ also found that Wood reportedly engaged in activities inconsistent with the marked limitations Dr. Gay suggested, including extensive physical activities and social interactions with her family. Admin. R. 393. The ALJ noted that Wood had repeatedly discontinued psychiatric medications after brief trials. Failure to follow a recommended course of treatment provides a reasonable basis to question the accuracy of the symptoms she reported to Dr. Gay. *Tonapetyan*, 242 F.3d at 1147-48. The ALJ also noted that the medical record did not reflect any significant deterioration in her mental functioning to explain why Wood lost the ability to work through distractions and tolerate interactions with coworkers. Admin. R. 393.

The ALJ's reasons are specific and legitimate and give a clear and convincing explanation for the weight he attributed to Dr. Gay's opinion. The explanation is supported by reasonable inferences drawn from substantial evidence in the record. Accordingly, the ALJ's evaluation of Dr. Gay's opinion cannot be disturbed. *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

Wood also relies on the findings of Drs. Nahman and Greenough, and Ms. Myers, a social worker. She contends these findings establish limitations sufficient to satisfy the B criteria. This argument is not supported by the evidence. Dr. Nahman noted that Wood's "problems would be easily treated" in therapy. Admin. R. 237. Dr. Greenough said Wood may work well in a receptionist role. Admin. R. 212. Ms. Myers noted that Wood responded well to antidepressants and wanted to work. Admin. R. 207. None of these sources indicate any specific functional limitations. When a medical source does not identify specific functional limitations, the ALJ need not presume the claimant has any. *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010).

Wood did not satisfy her burden of showing that her limitations satisfied the B criteria for mental impairments. I find no error at step three of the ALJ's decision.

### IV.     RFC Assessment

The ALJ determined based on the entire record that before August 28, 2007, Wood had the RFC to perform a modified range of light work. She had a limited ability to read, write, and work with numbers. She could occasionally reach overhead. She could not climb a ladder. She could understand, remember, and carry-out simple, short instructions and perform routine tasks. She could have no interaction or contact with the general public and only superficial interaction with coworkers. Admin. R. 392. The RFC calculation properly "took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints." *Bayliss*, 427 F.3d at 1217.

7 - OPINION AND ORDER

### A. Credibility Determination

Wood alleged that the combined effects of her chronic cervical spine strain, anxiety disorder, learning disorder, dysthymic disorder, and lumbar degenerative disc disease prevented her from working. At the administrative hearing, Wood testified that in 1999 she was unable to lift more than 25 pounds, the pain of her headaches precluded activity after less than an hour, she could not hold her hands out in front of her without pain, her left hand often cramped during use, and stressful situations caused her to experience emotional outbursts. Admin. R. 364, 367, 368, 369.

The ALJ determined that the medical evidence supported impairments that could reasonably be expected to cause some of the symptoms Wood alleged, but he did not believe her claim that the symptoms were so intense and persistent that they imposed limitations in excess of those in the RFC assessment. Admin. R. 392. Thus, the ALJ did not credit Wood's claims that she required excessive rest breaks because of her headaches and cramping. The ALJ acknowledged that Wood may have some physical restrictions, but did not believe Wood's assertion that her symptoms would preclude all work. Admin. R. 393. Wood argues the ALJ erred in finding her not wholly credible.

An adverse credibility determination must include specific findings supported by substantial evidence and the ALJ must provide a clear and convincing explanation. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen,* 80 F.3d at 1281-82. The findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Tommasetti,* 533 F.3d at 1039 (*quoting Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995)). The reviewing court may not second guess an ALJ's credibility determination, however, if it is supported by substantial evidence. *Fair,* 885 F.2d at 604.

An ALJ must consider all the evidence in the case record when assessing a claimant's credibility, including objective medical evidence, medical opinions, treatment history, daily activities, work history, third-party observations of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F.3d at 1039; *Smolen*, 80 F.3d at 1284; SSR 96-97p, 1996 WL 374186, at *5.

Here, the ALJ considered proper factors when determining Wood's credibility. He found that Wood's activity level precluded the severity of her claims. An ALJ may reasonably question the credibility of a claimant whose daily activities appear inconsistent with the symptoms she claims. *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001). Wood alleged disability beginning in December 1999, in part from severe physical limitations, but later reported swimming twice a week, working out for four hours, canoeing, hiking, performing yard work, helping her son move into an upstairs apartment, and horseback riding for up to four hours. Admin. R. 322, 328, 393. The ALJ found these activities, and others, inconsistent with the claimant's reports of severe pain beginning in the late 1990s and progressively worsening during the relevant time for her claim. Admin. R. 393.

In addition, the ALJ observed that Wood had been able to engage in work through 1993 despite the limitations imposed by her life-long learning disability. Admin. R. 393. Such work experience shows the ability to cope with an impairment and suggests that a claimant may not be fully credible regarding the severity of the impairment. *Gregory v. Bowen*, 844 F.2d 664, 666-7 (9th Cir. 1988).

The ALJ also considered Wood's treatment history, noting that she received generally conservative treatment. Conservative treatment may be a reasonable basis to question a claimant's assertion of disabling symptoms. *Parra v. Astrue,* 481 F.3d 742, 750-51 (9th Cir. 2007); *Johnson v.*

9 - OPINION AND ORDER

*Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995). For example, as the ALJ noted, despite her claims of disabling depression, Wood never undertook mental health counseling, suggesting that she found adequate relief from medications. Admin. R. 393.

The treatment history suggests that Wood's antidepressant medications provided relief from her depression and anxiety. Admin. R. 161, 207, 225, 236, 243, 337, 342. Impairments that are effectively controlled by medication are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Despite the noted efficacy of her treatment regimen, Wood sometimes failed to renew her prescriptions. Admin. R. 339-42, 393. When a claimant makes subjective statements about disabling symptoms, but fails to comply with prescribed treatment, an ALJ may reasonably find the subjective statements unjustified or exaggerated. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Flaten v. Sec'y of Health and Human Serv.,* 44 F.3d 1453, 1464 (9th Cir. 1995); *Fair,* 885 F.2d 597, 603 (9th Cir. 1993); *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991).

Finally, the ALJ found that the medical record contradicted the alleged severity of her symptoms. Wood reported depression long before the alleged onset of her disability. In 1988, she said she had been depressed "for the last three or four years." Admin R. 162. Despite her depression, Wood worked alongside coworkers until she stopped working in 1993. Admin. R. 364. As the ALJ noted, the record does not show a significant change in Wood's mental condition after she stopped working. Her ability to work with others in the past, despite her anxiety and depression, suggests that these symptoms do not limit her to the extent she claims. Admin. R. 393.

The ALJ made findings sufficiently specific for me to conclude that he did not arbitrarily discount Wood's credibility. His findings are supported by substantial evidence and his reasoning

10 - OPINION AND ORDER

is clear and convincing. Accordingly, the credibility determination cannot be disturbed. *Tommasetti*, 533 F.3d at 1039; *Fair*, 885 F.2d at 604.

### B. Medical Opinions

Wood contends the ALJ failed to properly account for the opinions of Dr. Nahman, Dr. Greenough, and social worker Ms. Myers. The ALJ found that "those medical opinions are generally consistent with the record and given equal weight." Admin. R. 394. As noted previously, none of the medical opinions, apart from Dr. Gay's, identified specific functional limitations or work-related activities Wood could not do prior to August 28, 2007. Accordingly, these opinions were consistent with the limitations the ALJ determined in the RFC assessment.

Dr. Gay opined that Wood's depression caused emotional outbursts, pain complaints, compulsive eating, unhappiness, lack of interest, and continuous distress. He also noted her consistent reports of pain on the left side of her neck, headaches, and cramping in her left hand. He expected these headaches to interrupt her two or three times a day for more than 30 minutes at a time. He opined that if she used her left upper extremity for more than two hours in an eight-hour work day, she would develop cramps and become unable to use that hand and arm for the remainder of the day. He opined that Wood's mental impairments would prevent her working at least half of an eight-hour day. He said she would have emotional outbursts and would require 30 minutes to compose herself afterwards. Dr. Gay said Wood would not be able to take instruction or criticism from supervisors or coworkers and recommended that she never interact with the general public. Admin. R. 306-07.

The ALJ properly explained the weight he afforded Dr. Gay's opinion as described more fully in the previous discussion of his opinion regarding the B Criteria. I find no error in the ALJ's

11 - OPINION AND ORDER

evaluation of the medical opinions.

### C. Lay Witness Statements

Wood contends the ALJ failed to give sufficient weight to the statements of her husband, Daniel Wood. Mr. Wood said that she experienced headaches, pain in her arm after activities such as vacuuming, and emotional outbursts continuously since 1993 and that these symptoms had not changed. Admin. R. 374-75, 378, 393. The ALJ did not wholly disregard Mr. Wood's testimony, but gave it moderate weight. Admin. R. 393.

An ALJ must consider lay witness testimony concerning a claimant's ability to work. *Stout v. Comm'r of Soc. Sec. Admin.,* 454 F.3d 1050, 1053 (9th Cir. 2006). Lay testimony as to the claimant's symptoms or how an impairment affects the ability to work cannot be disregarded without comment. *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount the testimony of a lay witness, he must give reasons that are germane to the witness. *Lewis,* 236 F.3d at 511.

The ALJ provided adequate reasons here. The ALJ accepted Mr. Wood's statement that Wood's symptoms had not changed significantly since 1993. This reasonably suggests that Wood's limitations were about the same during the time for which she claims disability as they were six years before the alleged onset of her disability. The ALJ also noted that this conclusion was consistent with the medical evidence, which did not support a significant deterioration in her condition at the time she allegedly became disabled. Admin. R. 393-94.

The ALJ discounted Mr. Wood's later statement that Wood's mental health had declined since approximately January 1999. Admin. R. 393. The ALJ found this inconsistent with Mr. Wood's earlier statement indicating no change and with the medical evidence, which did not support

a decline in mental health at that time. Admin. R. 393-94. The unexplained inconsistency in Mr. Wood's statements and the absence of medical evidence supporting a decline in mental function were germane reasons for limiting the weight the ALJ attributed to Mr. Wood's testimony. *Bayliss*, 427 F.3d at 1218; *Lewis*, 236 F.3d at 511. It was not error for the ALJ to rely on other credible evidence he found more persuasive than the lay witness statements. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

The ALJ's interpretation of Mr. Wood's statements in context with the record as a whole is rational and he explained the weight given to the statements with reasons germane to the witness. Accordingly, the ALJ's evaluation of this evidence was not erroneous. *See Lewis*, 236 F.3d at 511-12 (ALJ may reject lay witness statement for reasons germane to the witness); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (court must uphold AJL's rational factual findings even if the evidence also supports another rational interpretation).

### V. Step Five

Wood contends the ALJ failed to fulfill his burden at step five to establish that, during the relevant time, jobs that Wood could perform existed in significant numbers in the national economy. An ALJ can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. *Andrews*, 53 F.3d at 1043.

At Wood's administrative hearing, the ALJ elicited vocational expert testimony based on limitations the ALJ found credible and supported by substantial evidence. Admin. R. 380-81. The vocational expert identified janitorial and food prep occupations that a person with Wood's limitations could perform and said they represented significant numbers of jobs in the national economy. Admin. R. 380-81.

Wood's argument rests on additional limitations presented by her representative at the hearing, which were not part of the ALJ's RFC assessment. Admin. R. 381. An ALJ is not required to incorporate limitations he found unsupported by the evidence in the record. *Batson*, 359 F.3d at 1197-98; *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Accordingly, Wood's challenge to the vocational expert testimony must be rejected.

## VI.     Post-Decision Evidence

Wood contends the Appeals Council erroneously failed to take into account a letter from James MacMillan, M.D., a psychiatrist. The Appeals Council completed its work on January 22, 2010, when it issued a decision modifying the ALJ's decision. Admin. R. 9-13. Wood did not submit Dr. MacMillan's letter until four months later on May 18, 2010. Pl.'s Br. 13.

Wood says she submitted Dr. MacMillan's letter while her case was "still pending at the Appeals Council." Pl.'s Br. 13. In fact, the letter was submitted four months after the Appeals Council issued the Commissioner's final decision. Wood's reliance on *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157 (9th Cir. 2012) is, therefore, misplaced. In *Brewes* and similar cases, such as *Ramirez v. Shalala*, 8 F.3d 1449 (9th Cir. 1993), the claimant submitted additional evidence with a request for review by the Appeals Council and the Appeals Council considered the additional evidence in determining whether review should be granted. These cases do not pertain to Wood's situation in which the additional evidence was submitted long after the Commissioner's decision became final when the Appeals Council issued its findings on the merits. 20 C.F.R. §§ 404.955, 404.981; *see also Bass v. Soc. Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989) (Commissioner's decision becomes final when the Appeals Council denies or grants review). Accordingly, I find no basis under which Wood's failure to submit the letter in a timely fashion can be construed as an error

on the part of the Appeals Council.

Nevertheless, Wood argues that the Appeals Council must consider any new and material evidence that relates to the time period under review by the ALJ. 20 C.F.R. § 404.976. To the extent this requirement applies to evidence submitted long after the Commissioner's final decision, I find that Dr. MacMillan's letter is not material.

Dr. MacMillan saw Wood and her family in 1992 and 1993. Although he prescribed an antidepressant medication to Wood, the focus of this treatment was to address behavioral problems of Wood's son. Dr. MacMillan prescribed Zoloft to Wood "in the mid-1990s" and saw her once again in 2003. His records from this treatment no longer exist so he had to rely on his memory from the mid-1990s. He also reviewed records from Wood's physicians, including Dr. Gay, Dr. Greenough, Dr. Nahman, and social worker Ms. Myers, all of which are included in the administrative record before the ALJ. In short, Wood asked Dr. MacMillan to provide an opinion of her level of functioning in December 1999, based on his memory of treatment in 1993 and on the records of other providers. Pl.'s Br. 13.

Evidence is material only if there is a "reasonable possibility" that it would have altered the outcome of the administrative proceedings. *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990); *Booz v. July 13, 2015Sec'y of Health and Human Serv.,* 734 F.2d 1378, 1380 (9th Cir. 1984). Dr. MacMillan's letter provides a cumulative review of contemporaneous evidence from other providers that was already in the record before the ALJ and the Appeals Council. His opinion does not present new evidence, only a post hoc interpretation of evidence the Commissioner has already reviewed. I find it exceedingly unreasonable to expect the Commissioner to give greater weight to the late opinion of Dr. MacMillan than to the contemporaneous sources.

15 - OPINION AND ORDER

Dr. MacMillan had no clinical observations or findings of his own on which to form an opinion about the time he was asked to address. His opinion relates to a time when he had not seen Wood for at least six years and would not see her again for another four years. I find that the opinion does not suggest a reasonable possibility that the administrative outcome would have been altered.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this 20th day of July, 2015.

Robert E. Jones, Senior Judge
United States District Court